Docket Nos. 80, 81, 100, 109

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARVIN MURPHY, <br><br> Defendant. | Criminal Action No. 22-361-RMB <br><br> **OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

After this Court convicted Defendant Michael Murphy ("Defendant" or "Murphy") of conspiracy to distribute and possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(C, in violation of 21 U.S.C. § 846, Defendant now asks this Court to throw out the verdict and acquit him or give him a new trial. Defendant makes two arguments. First, there was insufficient evidence to find beyond a reasonable doubt that he conspired to possess and distribute cocaine. Second, he did not knowingly and voluntarily waive his right to a jury trial because neither the Court nor his then-trial counsel advised him of the allegedly inherent risk that this Court who denied his motion to suppress would also serve as the factfinder at his bench trial. Both arguments fail. For the reasons that follow, Defendant's Motion for Judgment of Acquittal, or, Alternatively, for a New Trial (the "Motion") is **DENIED** in its entirety.

## I.    BACKGROUND

The Court writes primarily for the parties, for whom the facts and evidence are familiar. On July 5, 2023, a federal grand jury returned the one-count Superseding

Indictment, charging Defendant with knowingly and intentionally conspiring and agreeing with Carl Lee Holloway, Lavinston Lamar, and others to distribute and possess with intent to distribute at least 5 kilograms of cocaine, a Schedule II controlled substance, contrary to 21 U.S.C. §§ 841(a)(l) and (b)(l)(C), in violation of 21 U.S.C. § 846.[1]  [Docket No. 42.] Defendant, then represented by Criminal Justice Act-appointed counsel Ira Slovin, Esquire, filed an omnibus motion several months later seeking to suppress his warrantless arrest and the warrantless seizures of his cellphones and a bag full of cash, as well as the suppression of evidence obtained from search warrants authorizing law enforcement to search his cellphones.  *See* [Docket No. 50.]

On May 7, 2024, the Court held an evidentiary hearing where the Government presented the testimony of Mitchell Martinez and Brian Trudel, two Department of Homeland Security special agents involved in the undercover sting operation that led to Defendant's arrest and conviction.  *See* [Docket No. 65.]  Martinez testified about his undercover work, the inception of the operation with a confidential source and Holloway in California, his communications with Holloway, and subsequent interactions with Holloway, Lamar, and Defendant at a prearranged meeting at a hotel in Mount Laurel, New Jersey. [*Id.* at 7:24–91:13.]  Trudel testified about his observations inside the New Jersey hotel room, the surveillance agents' observations outside the hotel, and his application for various search warrants. [*Id.* at 97:3–132:16.]  The Court also received into evidence, among other things, video footage depicting the meeting in the hotel room. [*Id.* at 36:2–8.]  After review, the Court denied Defendant's omnibus motion in its entirety in a written opinion, crediting Martinez's

---

[1] The grand jury originally indicted Defendant with conspiracy to distribute and possess with intent to distribute at least 5 kilograms of cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), in violation of 21 U.S.C. § 846.  [Docket No. 31.]

and Trudel's testimony in full. [Docket No. 66, at 14–15, 20 (citations omitted).] Following the denial of suppression, the Court granted the request by Defendant's then-counsel to withdraw and subsequently appointed Thomas Burke, Esquire ("prior Counsel"), as Defendant's legal representation. [Docket Nos. 68, 72.]

Months later, the Government advised the Court of Defendant's "desire to proceed to a bench trial" and requested the Court to conduct a jury trial waiver colloquy. [Docket No. 83.] On March 5, 2025, at which Defendant and prior Counsel both appeared in-person, the parties agreed on a colloquy. And, as the record demonstrates, the Court went beyond the parties' proposed colloquy at the hearing. First, the Court asked in open court in the presence of Defendant and before proceeding with the colloquy whether there would be "a stipulated trial or is the Court the fact finder?"[2] [Docket No. 95, at 4:6–7 ("Colloquy Tr.").] In response, prior Counsel clarified twice that the "*[t]he Court would be the fact finder.*" [*Id.* at 4:6–13 (emphasis added).] Prior Counsel further explained that Defendant "would require the government to call witnesses to testify … in an attempt to build an evidentiary foundation, such that *you* then make a decision whether or not they've proven their case or they failed to prove their case." [*Id.* at 4:13–18 (emphasis added).] The Court then began the colloquy in

---

[2] Before moving onto the colloquy, the Court addressed Defendant's Supplemental Motion to Suppress the search warrants of his cellphones pursuant to *Franks v. Delaware*, 438 U.S. 156 (1978). [Docket No. 80.] After reviewing the briefs, the Court found on the record that Defendant had satisfied neither prong of the *Franks* inquiry and denied suppression: there was no substantial preliminary showing that Trudel had knowingly or recklessly included a false statement in or omitted facts from the affidavit, and, even assuming otherwise, Defendant had not adequately shown that the false statements were necessary to the finding of probable cause. [Colloquy Tr., 5:15–7:3.] The Court also granted on the record the Government's unopposed Motion in Limine to admit co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E) and expert testimony on drug trafficking under Federal Rule of Evidence 702, after reviewing the motion papers. [*Id.* at 7:4–21.] The Court will therefore direct the Clerk of Court to respectively deny and grant these two motions on the docket.

accordance with the proposed Rule 23(a) jury trial waiver colloquy.  [*Id.* at 8:2–4.]  As emphasized below, this Court made clear several times its role as factfinder at the bench trial. Pertinently, the Court addressed Defendant as follows:

> THE COURT:  Okay.  Do you understand that a jury trial means that you will be tried by a jury consisting of 12 people and that all of the jurors must agree on the verdict?
>
> [MURPHY]:  Yes, Your Honor.
>
> THE COURT:  Do you understand that you have the right to participate in the selection of the jury?
>
> [MURPHY]:  I do, Your Honor.
>
> THE COURT:  Do you understand that if I approve your waiver of a jury trial, *the Court will try the case and determine your innocence or guilt*?
>
> [MURPHY]:  Yes, Your Honor.
>
> THE COURT:  Have you discussed with your attorney your right to a jury trial?
>
> [MURPHY]:  I have.
>
> THE COURT:  Have you discussed with your attorney the advantages and disadvantages of a jury trial?
>
> [MURPHY]:  I have.
>
> ---
>
> THE COURT:  Okay.  Mr. Burke, let me ask you: Have you discussed with the defendant the advantages and disadvantages of a jury trial?
>
> MR. BURKE:  I have, Your Honor.
>
> THE COURT:  And do you have any doubt that the defendant is making a knowing and voluntary waiver of the right to a jury trial?
>
> MR. BURKE:  I have no doubt of that.
>
> THE COURT:  Has anything come to your attention suggesting that the defendant may not be competent to waive a jury trial?
>
> MR. BURKE:  No, Your Honor.
>
> THE COURT:  Do you know of any reason why the defendant should not waive his -- start over.  Do you know of any reason the defendant should not waive his right to a jury trial?

4

MR. BURKE:  No, Your Honor.

THE COURT:  Mr. Murphy, has Mr. Burke gone over with you the advantages and disadvantages of a jury trial?

[MURPHY]:  He has, Your Honor.

---

THE COURT:  Okay. Any questions for me, Mr. Murphy?

MR. BURKE:  Do you have any questions for the Judge?

[MURPHY]:  No, Your Honor.

THE COURT:  All right. So having asked you all of these questions and having advised you of the charges against you, which you've been advised of and the penalties you're facing, is it still your desire to waive your right to a jury trial?

[MURPHY]:  It is, Your Honor.

THE COURT:  Okay. Thank you.

[*Id.* at 8:10–15:5 (emphasis added).]  Based on the colloquy, the Court explicitly found on the record that Defendant knowingly, voluntarily, and intelligently waived "his right to a jury trial, and *this Court will be the fact finder*."  [*Id.* at 15:17–16:4 (emphasis added).]

The Court then raised the issue of revocability with Defendant.  The Court wanted to clearly convey to Defendant that should he choose to rescind his waiver, he could do so before the first witness was sworn.  [*Id.* at 16:5–25.]  The Court addressed next the parties' respective positions on whether they wanted to waive their right to specific factual findings under Federal Rule of Criminal Procedure 23(c).  The Court explained to Defendant as follows:

THE COURT:  Okay.  So you understand if a party requests -- before *this* Court were to make *its* determination of guilt or nonguilt, the party could request that *this* Court make *its* specific findings as to why *it* rendered a finding of guilty or not guilty.  It's not required, but if a party requests it, the Court would do that under Rule 23(c).  And so you are waiving your right, you are simply requesting

that this Court find you guilty or not guilty -- in your case not guilty – and *I* don't need to give specific findings.

[MURPHY]:  You -- you don't -- wait, wait.  That's not the same thing he just -- he told me about a – he said something about a jury trial.

MR. BURKE:  No. I'll do it louder.  I'll do it louder.  In other words, if the *Judge* finds you not guilty, *she* doesn't have to state on the record the reason why.  But what does it matter to you?  If *she* finds you not guilty, the case is over and you leave through that door.

[MURPHY]:  But if *she* finds me guilty, then I would like for *her* to say why *she* –

MR. BURKE:  *She* will have to in a subsequent opinion.  *She* doesn't have to do it on the record in front of you.  *She* could do it in a subsequent opinion.  When you appeal, you're entitled to that. *She* has to file an opinion if –

[MURPHY]: Well, I would prefer that, like to know if I do get found guilty or not guilty, whatever, I would like to know what it is I'm being found guilty of.  I do want to know that.

MR. BURKE:  Well, you do understand what the charge is, right? You have a copy of the indictment.

[MURPHY]:  I do.

MR. BURKE:  And you have read that, correct?

[MURPHY]:  Yes.

MR. BURKE:  So you know what you're being charged with?

[MURPHY]:  I do.

MR. BURKE:  Okay.  So, in other words, like, again, if the Court finds you not guilty, the reasons are irrelevant to you because you're free to go.

[MURPHY]:  It is. It would be. And then if I got found guilty, then I would know because if I come -- if I appeal whatever the decision was, I would have a basis of the decision based on what the *Judge* put into *her* –

MR. BURKE:  Opinion.

[MURPHY]:  -- in *her* record, the *Judge's* opinion.

THE COURT:  All right. I'm just going to delete the part that talks about findings of fact, and the Court will make its findings of fact, which *I* would intend to do then and there at the conclusion of the trial.  Okay. So I'm going

6

to hand you the waiver of trial by jury for your signature, Mr. Murphy, and for your signature, Mr. Burke.  It would be most likely not -- just for the benefit of the parties, *I* do not envision the Court issuing a written decision but a decision from the bench.  And whether it's upon the conclusion of the trial or *I* bring the parties in and *I* render my ruling from the bench, *I* would so do.

[*Id.* at 18:7–20:14 (emphasis added).]  Defendant, prior Counsel, the Government, and the Court then signed a Waiver of Trial by Jury.  [*Id.* at 20:23–24; Docket No. 85.]  In so doing, Defendant explicitly acknowledged that he "was fully informed of [his] right to trial by jury in this case," "waive[d] that right," and "request[ed] *the court to try all issues of fact* and law without a jury."  [Docket No. 85 (emphasis added).]

Trial commenced on March 17, 2025, *twelve days after* the Court's Rule 23(a) colloquy during which Defendant had ample opportunity to reconsider his decision to waive his right to a jury trial.  Prior to opening statements, however, the Court again discussed with Defendant—as it had 12 days earlier—that he could still revoke his jury-trial waiver at any point prior to the swearing-in of the first witness.  [Docket No. 96, at 6:24–7:14 ("Trial Tr.").]  As a precaution, the Court specifically asked Defendant if he understood that he could revoke his waiver prior to "when this trial begins and the first witness is sworn."  [*Id.* at 7:15–23.]  Murphy answered, "I do now, Your Honor, yes."  [*Id.* at 8:1.]  The Court inquired one again, "You understand that?", to which Murphy reiterated that, "I do."  [*Id.* at 8:2–3.]  With that understanding, trial began and the first witness, Mitchell Martinez, was sworn.  [*Id.* at 8:4–26:15.]  On March 18, 2025, following a two-day trial and hearing the testimony of several witnesses and receiving many exhibits in evidence, the Court convicted Defendant of the offense charged in the Superseding Indictment.  [*Id.* at 378:20–379:4; Docket No. 89.]

Defendant did not move for judgment of acquittal at the close of the Government's case or within 14 days of the Court's verdict as required by Rule 29(c).  *See* FED. R. CRIM. P.

29(c).  In the meanwhile, Defendant retained Ms. Margaret M. Grasso, Esquire ("present Counsel"), who submitted an unopposed motion to file a Rule 29 and Rule 33 motion *nunc pro tunc.*  [Docket Nos. 91–92.]  After the Court granted him a subsequent extension of time to do so, Defendant filed the Motion.[3]  [Docket No. 100 ("Defendant Br.").]  Because Defendant's Rule 33 claim alleged that he was never advised by prior Counsel nor this Court that the Court would serve as the factfinder at his bench trial after serving as the factfinder on his motion to suppress physical evidence, the Government requested to interview prior Counsel in order to adequately respond.  [Docket No. 101.]

On its own motion, the Court ordered Defendant to reassess the meritoriousness of his claim because he had failed to address the waiver colloquy, a colloquy that this Court and the parties had deemed sufficient.  [Docket No. 102.]  In his supplemental response, Defendant maintains that, although he "understood in the abstract that the Court would be the factfinder," "neither the Court nor his trial counsel explained a critical fact: that the same Court had previously presided over his suppression hearing and issued a written opinion making specific credibility findings adverse to the defense." [Docket No. 103, at 1.]  "Without being advised of this risk," Defendant allegedly "could not appreciate that his waiver effectively placed factfinding in the hands of a judge who had already made determinations highly relevant to guilt or innocence."  [*Id.* at 2.]

The Court held another hearing on October 8, 2025.  [Docket No. 114 ("Rule 33 Tr.").]  At the second hearing, present Counsel clarified that Defendant's Rule 33 claim is one of

---

[3] Over two months after Defendant filed the Motion, Defendant independently filed a Motion for Transcript of 9/24/2024, requesting said transcript without explanation and, inexplicably, an extension of time to file the admittedly-pending Motion.  *See* [Docket No. 109.] Defendant's request for the transcript is denied.

ineffective assistance of counsel. *See* [*id.*] Sensing a shift in Defendant's position, the Court ordered the parties to supplementally brief the issue of whether this Court has jurisdiction to hear an ineffective assistance of counsel claim brought under Rule 33. Each party has timely filed submissions on this issue. [Docket Nos. 108 ("Defendant Rule 33 Br."), 110 (Gov't Rule 33 Br.").]

## II.    DISCUSSION

### A. Motion for Judgment of Acquittal

#### 1.  Standard of Review

Federal Rule of Criminal Procedure 29 requires the Court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction" following the return of a guilty verdict. FED. R. CRIM. P. 29(a), (c). In assessing evidentiary sufficiency, the Court "interpret[s] the evidence in the light most favorable to the government as the verdict winner and 'do[es] not weigh evidence or determine the credibility of witnesses in making [its] determination.'" *United States v. Zayas*, 32 F.4th 211, 217 (3d Cir. 2022) (quoting *United States v. Gambone*, 314 F.3d 163, 169–70 (3d Cir. 2003)); *see also United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002). A finding of insufficiency is "confined to cases where the prosecution's failure is clear." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)).

"As the Supreme Court stated in *Jackson v. Virginia*, 443 U.S. 307 (1979), 'the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424–25 (3d Cir. 2013) (emphasis in original) (quoting *Jackson*, 443 U.S. at 318–19).  Under this "'highly deferential' standard," *United States v. Eddings*, 161 F.4th 199, 203 (3d Cir. 2025) (quoting *id.* at 430–31), a criminal defendant carries an "extremely high" burden, *United States v. Salahuddin*, 765 F.3d 329, 348 (3d Cir. 2014); *see also United States v. Young*, 334 F. App'x 477, 480 (3d Cir. 2009) (citation omitted) ("Young bears a heavy burden in light of our 'particularly deferential' standard of review in cases challenging the sufficiency of the evidence.").

### 2. Conspiracy

The essential elements for Count One of the Indictment, conspiracy to distribute and possess with the intent to distribute a controlled substance, 21 U.S.C. §§ 841(a)(l) and (b)(l)(C), in violation of 21 U.S.C. § 846, are: (1) two or more persons agreed to distribute and possess with the intent to distribute a controlled substance; (2) Defendant was a party to or member of that agreement; and (3) Defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that Defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that objective.  *See* [Trial Tr., 368:25–369:18]; Third Circuit Model Instruction 6.21.846B; *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). Defendant argues that the Government's evidence does not establish beyond a reasonable doubt that he knowingly joined a conspiracy to distribute cocaine.  *See* [Defendant Br., 7–10.]

Conspiracy requires proof that Defendant knew of the conspiracy's illegal goal and agreed to work toward that goal.  *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010); *United States v. Mastrangelo*, 172 F.3d 288, 291 (3d Cir. 1999).  A conspiracy may be proven by

direct or circumstantial evidence, and a factfinder may infer the existence of a conspiracy based on the totality of the evidence. *Brodie*, 403 F.3d at 134; *see also Smith*, 294 F.3d at 477. The Government's evidence is not viewed "in isolation, but rather, in conjunction and as a whole. The court must determine whether all the pieces of evidence, taken together, make a strong enough case to let a [factfinder] find [the defendant] guilty beyond a reasonable doubt." *Brodie*, 403 F.3d at 134 (citation and internal quotation marks omitted); s*ee also United States v. U.S. Gypsum Co.*, 600 F.2d 414, 417 (3d Cir. 1979) (citation omitted) ("[T]he character and effect of a conspiracy (is) not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."). "To sustain a conspiracy conviction, the 'contention that the evidence also permits a less sinister conclusion is immaterial …. [T]he evidence does not need to be inconsistent with every conclusion save that of guilt.'" *Smith*, 294 F.3d at 478 (quoting *United States v. Dent*, 149 F.3d 180, 188 (3d Cir. 1998)).

### 3. The Trial Evidence

The evidence in this case is sufficient to sustain Defendant's conspiracy conviction. Homeland Security Investigations ("HSI") Special Agents Mitchell Martinez and Zachary Bulman—both experienced undercover narcotics investigators—testified to the origin, planning, and execution of the interstate sting operation that led to Defendant's arrest and his conviction. [Trial Tr., 26:17–161:20.] Martinez learned from a confidential informant that "an individual from the East Coast," Holloway, "wanted to buy cocaine." [*Id.* at 30:10–12.] Holloway "was willing to fly to San Diego to look at or to meet with individuals that could provide him with cocaine." [*Id.* at 30:14–15.]

So began what Trudel described as a "buy-bust operation", where, "[b]asically the government was acting as if they were narcotics traffickers, so they would be providing drugs

11

to targets in the New Jersey area." [*Id.* at 202:5–12.] Going by the nom de guerre "Chava," Martinez scheduled a "show-and-tell" with Holloway in San Diego for June 23, 2021. [*Id.* at 30:23–33:2, 39:3, 118:16–17.] That day, Martinez and the confidential informant picked Holloway up from his hotel and drove to a restaurant at approximately 1:00 p.m. [*Id.* at 33:3–22.] Once there, the trio spent a couple hours "discussing cocaine prices," Holloway inspecting the cocaine[4] "for quality," and settling on a price. [*Id.* at 37:13–18, 38:22–39:15, 43:22–25.] Martinez testified that Holloway "wanted to move forward with the purchase" and that "he had friends that wanted to purchase cocaine as well." [*Id.* at 38:14–15, 39:18–20]; *see also* [*id.* at 101:10–11 (Matinez testifying that Holloway "need[ed] to bring in other buyers").] Martinez then testified that Holloway called "his friends" at approximately 2:00 p.m. Pacific Standard Time. [*Id.* at 39:18–25, 41:13, 42:3–9.] By meeting's end, Martinez believed that Holloway and the "person from Philly or his boy from Philly" were going to purchase the cocaine. [*Id.* at 43:22–44:7.] Holloway then returned to the East Coast to "get the money together." [*Id.* at 104:13–16.]

At the time of their arrests, police seized a blue Samsung Galaxy A10E and blue iPhone from Defendant and a red iPhone and silver eTalk flip phone from Holloway. [*Id.* at 217:23–218:17.] HIS Cyber Operations Officer George Riley, admitted as an expert witness in forensic analytics of digital devices, testified that Holloway's eTalk had a phone contact for "Marv" with phone number (215) 941-0308. [*Id.* at 249:15–253:2, 261:14.] That number belonged to Defendant's Samsung Galaxy, which itself had a phone contact for "Dizzle" with Holloway's eTalk number of (267) 846-4561. [*Id.* at 271:4, 276:16–17.] Riley further testified

---

[4] Another agent had driven to the restaurant's parking lot with a kilogram of cocaine as part of the show-and-tell. [Trial Tr., 39:3–4.] According to Martinez, the Government had seized the cocaine "out at sea" and stored it at a local police department. [*Id.* at 31:23–32:6.]

that Defendant's Samsung Galaxy received an incoming phone call from Holloway's eTalk at approximately 2:07 p.m. Pacific Standard Time on June 23, 2021, as well as additional calls later in the day. [*Id.* at 277:4–278:14.]

Following the show-and-tell, Holloway and Martinez continued communicating over Signal, a messaging application frequently used in the drug trade because "its harder to trace" and "snoop on." [*Id.* at 44:20–46:21.] Holloway and Martinez spoke more about "the cocaine and prices," "where the cocaine was going," and Martinez also messaged Holloway a picture of cocaine because he "wanted to look at" it. [*Id.* at 49:3–52:20.] In one series of messages, Holloway sent Martinez pictures of United States currency, or "[p]roof of life," for himself and his "boy's." [*Id.* at 53:14–54:3.] Data extracted from their cellphones established that Holloway and Defendant correspondingly exchanged pictures of cocaine and currency. [*Id.* at 249:15–343:13.] Martinez and Holloway then finalized the terms of the deal: "15 kilos going to three separate individuals, or to Holloway and two other individuals." [*Id.* at 54:4–10.]

On the prearranged date of July 13, 2021, Martinez and his team arrived at a hotel in southern New Jersey with 15 kilograms of cocaine to execute buy-bust.[5] [*Id.* at 37:24–25, 60:10–17, 63:22–24.] At around noon, Martinez and another undercover agent met Holloway, who arrived first with $97,600, outside the hotel lobby and escorted him to the hotel room.[6] [*Id.* at 64:21–65:6, 208:11–12.] Once in the room, Holloway confirmed that each of the "three buyers" "wanted five kilograms of cocaine." [*Id.* at 70:12–16, 73:1–6.]

---

[5] Forensic scientist Dianna Casner expertly testified to the authenticity of the cocaine. [Trial Tr., 163:1–175:15.]

[6] The police seized the $97,600 from Holloway's car two days after his arrest. [*Id.* at 216:18–217:1.]

Lavinston Lamar arrived next with $145,000.  [*Id.* at 74:1–3, 216:16–17.]  Holloway, Martinez, and the undercover met him downstairs, but "wanted to see the money that he brought before taking him upstairs to view the cocaine."  [*Id.* at 74:1–3.]  "After viewing the money" in the parking lot the four returned to the hotel room "to view the cocaine."  [*Id.* at 70:1–13.]

Upon their return, another undercover delivered a red suitcase with five kilograms of cocaine to the room so Lamar could "cut[ ] open the brick of cocaine" for inspection.  [*Id.* at 77:7–25.]  A bit earlier, Holloway had been "talk[ing] on the phone …, giving [someone] instructions as to when he arrived … [and] … to call him when he got there."  [*Id.* at 75:16–21.]  "Lamar said he liked that cocaine" and Holloway, once more on the phone, said, "My boy is downstairs."  [*Id.* at 78:16–81:1.]  For security reasons, Martinez then suggested, and all four agreed, to go get Lamar's money from his truck parked in the lot, return to the hotel room, and exchange it for the cocaine.  [*Id.* at 81:5–19.]

When they "got downstairs the elevator doors opened up" and Defendant "was standing there" "holding a bag" of $97,000.[7]  [*Id.* at 85:4–11, 224:9–14.]  Holloway greeted Defendant, who appeared "[n]ormal" and not "surprised" according to Martinez.  [*Id.* at 83:1–84:23.]  Defendant "waited in th[e] general area while" Holloway, Lamar, Martinez, and the undercover retrieved Lamar's money.  [*Id.* at 85:5–8.]  Defendant initially said, "I'm going to go sit in the car," after Holloway had said "something about cameras," but the five individuals returned together to the hotel room.  [*Id.* at 85:17–86:8, 127:22–129:4.]  Once in the room, Lamar started bringing out his cash and Defendant showed Martinez what he then-

---

[7] Defendant stored the $97,000, of which Bulman testified to the accounting by Chase Bank officials immediately after Defendant's apprehension, in a blue canvas bag cached inside a blue floral print bag.  [Trial Tr., 154:12–161:23, 224:12–13, 226:13–15.]

believed to be "enough money to buy multiple kilograms of cocaine," upon which Martinez "instructed the other undercover to call the other undercover to bring the other five [kilograms of cocaine] down" which Defendant "was supposed to purchase." [*Id.* at 86:8–90:24, 226:16–17.] In the meanwhile, Defendant "began to inspect" and "look at the quality of the cocaine" already in the room. [*Id.* at 87:3–88:13.] Through it all, Martinez testified that Defendant did not seem surprised by what was occurring in the room, seemed voluntarily present, and did not behave as if he wanted to leave at any point. [*Id.* at 88:9–21.] The arrest team soon entered the room and apprehended Defendant, Holloway, and Lamar. [*Id.* at 93:19–21.].

### 4. Analysis

Defendant argues that this evidence, "at most," shows that he "was present at the hotel with Holloway and Lamar, carried a bag shown to contain money, and received ambiguous images on his phone." [Defendant Br., 10.] His conviction allegedly rests on mere "[p]resence, association and some innocuous actions" for three reasons: (1) Holloway never identified him "as a participant or one of the 'friends' for whom he was purportedly acting" at the June 23, 2021, show and tell; (2) Defendant never "discussed drugs, negotiated price, or agreed to a transaction" at the July 13, 2021, hotel meeting, during which his behavior was "shifting" and "reflect[ed] confusion, not participation;" and (3) that "none of the [phone] communications included dialogue about buying or selling drugs, quantities, prices, or [his] role." [*Id.* at 9–10.]

Defendant's "bad company," or "wrong place, wrong time," argument falls far short of sustaining his "extremely high" burden for Rule 29 relief. *Salahuddin*, 765 F.3d at 348. "While it is true that mere presence at the scene of a crime or associating with criminals is not in itself sufficient evidence of a conspiracy, the evidence presented at trial in this case, as well

15

as the inferences that rationally can be drawn from it, goes well beyond simply 'keeping bad company,' or [Defendant's] 'mere presence' at the crime scene."  *United States v. Rodriguez-Mendez*, No. 1:17-15-1, 2021 WL 6143581, at *2 (W.D. Pa. Dec. 29, 2021) (citing *United States v. Tyson*, 653 F.3d 192, 211 (3d Cir. 2011)).  Defendant selectively "isolate[es]" the evidence, *Brodie*, 403 F.3d at 134, and advocates an "immaterial" "less sinister conclusion," *Smith*, 294 F.3d at 478.

The trial record establishes the Holloway and Defendant maintained consistent communication, including "exchanges of photos of cash and cocaine," [Defendant Br., 10], from the initial June 23, 2021, show-and-tell in California up through the conclusive buy-bust at the southern New Jersey hotel on July 13, 2021.  *See supra*, 11–15.  These communications culminated in concerted action when Defendant appeared at the July 13, 2021, meeting alongside Holloway and Lamar with $97,000 in cash to purchase 5 kilograms of cocaine out of the total 15-kilogram supply from the undercover federal agents.  Defendant's claimed equivocality in all this is further belied by Martinez's testimony that Defendant seemed voluntarily present that day and unsurprised by the drug transaction that occurred in the hotel room.  [Trial Tr., 88:9–21.]

Defendant's implied insistence, moreover, on the necessity of direct evidence flies in the face of established law; the Government may establish a conspiracy from both direct and circumstantial evidence and rational inferences drawn therefrom.  *See Brodie*, 403 F.3d at 134; *Smith*, 294 F.3d at 477.  Viewing the totality of the evidence above "in the light most favorable to the government," *Zayas*, 32 F.4th at 217, "*any* rational trier of fact could have found," *Caraballo-Rodriguez*, 726 F.3d at 424–25, that Defendant knowingly joined with Holloway to distribute and possess with the intent to distribute at least 5 kilograms of cocaine beyond a

reasonable doubt.  The case at bar is certainly not one "where the prosecution's failure is clear" and Defendant's request for an acquittal pursuant to Rule 29 is therefore denied.  *Brodie*, 403 F.3d at 133.

### B.  Motion for New Trial

#### 1.  Standard of Review

While a defendant may move for a judgment of acquittal after being convicted, Rule 33 also allows a defendant to move for a new trial.  *See* FED. R. CRIM. P. 33.  Unlike Rule 29, where a court is limited in its scope of review, Rule 33 gives a court the discretion to "vacate any judgment and grant a new trial if the interest of justice so requires."  *Id.* 33(a).  Although Rule 33 endows courts with a bit more discretion than that under Rule 29, granting a motion for a new trial is confined to there being "a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted."  *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002); *see also United States v. Silveus*, 542 F.3d 993, 1004 (3d Cir. 2008) (citation omitted) ("Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case.").  Naturally, courts "sparingly" grant Rule 33 motions and do so "only in exceptional cases."  *Silveus*, 542 F.3d at 1005 (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).

#### 2.  Defendant's Jury-Trial Waiver

Defendant's Rule 33 claim appears to rest solely on an allegation of ineffective assistance of counsel, which Defendant concedes.  *See infra*, 26 n.12, Yet, despite that concession, Defendant brazens onward with an argument that a new trial is warranted because *this Court* failed to advise him of the alleged conflict between having the undersigned

17

render adverse credibility determinations at the suppression stage and then serve as the factfinder at his bench trial. This claim does not concern any deficiency on the part of prior Counsel, but rather an alleged failure by the Court itself. The Court finds this argument frivolous.

The Sixth Amendment guarantees the right to a trial by an impartial jury. U.S. CONST. amend. VI. "Rule 23(a) of the Federal Rules of Criminal Procedure requires that a defendant waive a jury trial in writing, that the government consent, and that the court approve." *United States v. Blair*, No. 23-2590, 2026 WL 604731, at *3 (3d Cir. Mar. 4, 2026). These three specific criteria are indisputably met and are not otherwise contested. *See* [Defendant Br.; Defendant Rule 33 Br.; Gov't Rule 33 Br.; Docket No. 103.] As described above, the Court engaged in a Rule 23(a) colloquy with Defendant and prior Counsel broader than that proposed by the Government and reviewed by Defendant and prior Counsel, and, once finished, found that Defendant knowingly, intelligently, and voluntarily waived his right to a jury trial. [Colloquy Tr., 7:23–16:4.] Defendant, prior Counsel, the Government, and the Court then signed and executed a Waiver of Trial by Jury on the record. [*Id.* at 20:23–24; Docket No. 85.] By so doing, Defendant explicitly acknowledged that he "was fully informed of [his] right to trial by jury in this case," "waive[d] that right," and "request[ed] *the court to try all issues of fact* and law without a jury." [Docket No. 85 (emphasis added).]

Defendant nevertheless trudges forward with his argument that his waiver was not knowing and voluntary because neither prior Counsel nor the Court advised him of "the particular risks of proceeding before the same Judge who had already credited the very law enforcement testimony that would be central to the Government's trial proof," *i.e.*, "having the same Court—one that had already made adverse credibility determinations against the

18

defense—serve as fact finder at trial, and omit[ing] a[ ] mention of his right to seek recusal in light of those prior findings." [Defendant Br., 11–12.] In short, Defendant argues that the colloquy should have also "advised that prior credibility determinations could reasonably call the Court's impartiality into question when sitting as the factfinder in a bench trial involving the same witnesses or that he could request recusal under 28 U.S.C. § 455(a) (whether or not it would be granted or he was entitled to such recusal under the law)." [*Id.* at 12.]

"The Supreme Court has repeatedly emphasized the importance of a criminal defendant's Sixth Amendment right to a trial by jury and that this right may only be ceded by a knowing, voluntary, and intelligent waiver." *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850–51 (3d Cir. 2017), *as amended* (July 18, 2017) (first citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 236–37 (1973); and then citing *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 276–77 (1942)); *see also Gov't of Virgin Islands v. Parrott*, 476 F.2d 1058, 570 (3d Cir. 1973) ("We recognize that the right to a jury trial under the Sixth Amendment is not effectively waived unless there is a knowing and intelligent waiver of such right by the defendant himself, as required in *Johnson v. Zerbst*, 304 U.S. 458 (1938)). The criminal defendant must waive the right "voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (collecting cases), *abrogated on other grounds by Garza v. Idaho*, 586 U.S. 232 (2019); *see also United States v. Grimes*, 739 F.3d 125, 128 (3d Cir. 2014).

Defendant's waiver of his right to a jury trial was constitutionally sound. To start, Defendant has not identified a single case requiring a waiver of the jury-trial right to constitutionally mandate the colloquizing judge to explain that "by waiving his right to a jury trial, he was permitting the same judge who had previously made explicit credibility

determinations against him in favor of the government to decide guilt beyond a reasonable doubt, and further failed to advise him that he could request the Court's recusal if he elected to proceed by non-jury trial."[8] [Defendant Rule 33 Br., 1, n.1]; *see* [Defendant Br.; Defendant Rule 33 Br.]; *cf. Blair*, 2026 WL 604731, at *3 (quoting *United States v. Lilly*, 536 F.3d 190, 198 (3d Cir. 2008)) (explaining "minimum" purpose of Rule 23(a) colloquy is to "ascertain the defendant's knowledge about the size of the jury, his right to participate in jury selection, the unanimity-in-the-verdict requirement, and that a bench trial will result in the judge alone deciding guilt."). There is no requirement that this Court recuse under these circumstances, much less invite a motion for recusal. As detailed throughout this Opinion, Defendant, who was present at all the proceedings, was clearly aware that this Court had denied his suppression motion and would serve as the factfinder at trial. And, there is no requirement that the Court question or cause Defendant to question the wisdom of his decision to waive his right to a jury trial. The Court's role is limited to ensuring that the waiver is made knowingly, voluntarily and intelligently.

Present Counsel appears to concede that the Court fulfilled its role. She conceded, when clarifying the claim, that she "can't take fault with the Court's colloquy" and was "not suggesting the Court should have said, 'Mr. Murphy, you really are sure you want to do this because you know I found the police officers credible at the motion-to-dismiss stage and I

---

[8] Insofar as Defendant contends that he was even *unaware* of the adverse credibility determinations made at the suppression hearing, that is patently frivolous. *See* [Docket No. 103; Rule 33 Tr., 17:5–12.] Defendant's Supplemental Motion to Suppress acknowledges the Court's written opinion repeating the adverse credibility determinations at issue and attaches as an exhibit the transcript of the suppression hearing. *See* [Docket No. 80.] The Court also repeated that it found, at least with respect to Trudel, his testimony credible when it ruled on the Supplemental Motion *before* starting the colloquy with Defendant. [Colloquy Tr., 6:9–19.]

probably will later during the trial, too?'" [Rule 33 Tr., 16:15–23.] According to present Counsel, the Court's colloquy "does meet the standards." [*Id.* at 16:17.] So what exactly is the argument for a new trial? The claims seem to shift, but to the extent Defendant claims that he did not know that this Court who had denied his suppression motion would decide his guilt or innocence, such claim is totally without merit.[9]

Defendant cannot argue in good faith that he did not know that the undersigned was the factfinder who had made adverse credibility determinations at the suppression hearing. *See supra*, 20 n.8. Before beginning the Rule 23(a) colloquy, the Court asked whether there would be "a stipulated trial or is the Court the fact finder?" [Colloquy Tr., 4:6–7.] Defendant's prior Counsel twice responded that "[t]he Court would be the fact finder." [*Id.* at 4:6–13.] And, contrary to Defendant's strained "abstract" distinction between "the Court" and the undersigned, *see* [Defendant Br., 11–14; Docket No. 103], prior Counsel explained that Defendant "would require the government to call witnesses to testify … in an attempt to build an evidentiary foundation, such that *you* then make a decision whether or not they've proven their case or they failed to prove their case."[10] [Colloquy Tr., 4:13–18 (emphasis added).] The English language proves indomitable. What was it that George Orwell once remarked, "The great enemy of clear language is insincerity"? GEORGE ORWELL, POLITICS AND THE

---

[9] Present Counsel even admitted at the second hearing on the Motion that Defendant "knew that I [the undersigned] was going to be the fact finder. He knew I was going to make the decision as to guilt or innocence. That was very clear from the colloquy." [Rule 33 Tr., 6:9–13.]

[10] "You" is "[u]sed to address a single person, animal, or personified thing, originally as a mark of respect, deference, or formality but later in general use." THE OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/you_pron?tab=meaning_and _use#13608547 (last visited Apr. 13, 2025); *see also* OXFORD LEARNER'S DICTIONARIES, htt ps://www.oxfordlearnersdictionaries.com/definition/english/you (last visited Apr. 13, 2025) (defining "you" as "the subject or object of a verb or after a preposition to refer to the person or people being spoken or written to").

ENGLISH LANGUAGE, *in* 4 Horizon 252 (1946), *reprinted in* 4 THE COLLECTED ESSAYS,

JOURNALISM AND LETTERS OF GEORGE ORWELL 127 (Sonia Orwell & Ian Angus eds., 1968).

This Court takes one step further. Defendant's position is insincerity wrapped in frivolity.

With it clearly established that the undersigned would serve as the factfinder at his

bench trial, the Court then relevantly colloquized Defendant as follows:

> THE COURT: Okay. Do you understand that a jury trial means that you will be tried by a jury consisting of 12 people and that all of the jurors must agree on the verdict?
>
> [MURPHY]: Yes, Your Honor.
>
> THE COURT: Do you understand that you have the right to participate in the selection of the jury?
>
> [MURPHY]: I do, Your Honor.
>
> THE COURT: Do you understand that if I approve your waiver of a jury trial, *the Court will try the case and determine your innocence or guilt*?
>
> ---
>
> [MURPHY]: Yes, Your Honor.
>
> THE COURT: Have you discussed with your attorney your right to a jury trial?
>
> [MURPHY]: I have.
>
> THE COURT: Have you discussed with your attorney the advantages and disadvantages of a jury trial?
>
> [MURPHY]: I have.
>
> ---
>
> THE COURT: Okay. Mr. Burke, let me ask you: Have you discussed with the defendant the advantages and disadvantages of a jury trial?
>
> MR. BURKE: I have, Your Honor.
>
> THE COURT: And do you have any doubt that the defendant is making a knowing and voluntary waiver of the right to a jury trial?
>
> MR. BURKE: I have no doubt of that.

22

THE COURT:  Has anything come to your attention suggesting that the defendant may not be competent to waive a jury trial?

MR. BURKE:  No, Your Honor.

THE COURT:  Do you know of any reason why the defendant should not waive his -- start over.  Do you know of any reason the defendant should not waive his right to a jury trial?

MR. BURKE:  No, Your Honor.

THE COURT: Mr. Murphy, has Mr. Burke gone over with you the advantages and disadvantages of a jury trial?

[MURPHY]:  He has, Your Honor.

---

THE COURT:  Okay. Any questions for me, Mr. Murphy?

MR. BURKE:  Do you have any questions for the Judge?

[MURPHY]:  No, Your Honor.

THE COURT:  All right. So having asked you all of these questions and having advised you of the charges against you, which you've been advised of and the penalties you're facing, is it still your desire to waive your right to a jury trial?

[MURPHY]:  It is, Your Honor.

THE COURT:  Okay. Thank you.

[Colloquy Tr., 8:10–15:5 (emphasis added).]  The Court then made an explicit finding on the record that Defendant knowingly, voluntarily, and intelligently waived "his right to a jury trial, and *this Court will be the fact finder.*"  [*Id.* at 15:17–16:4 (emphasis added).]

To ensure that Defendant understood his ability to rescind his jury-trial waiver, the Court then addressed Defendant's autonomy to do so up until the first witness was sworn.  [*Id.* at 16:5–25.]  The Court next addressed the parties' respective positions on whether they wanted to waive their right to specific factual findings under Federal Rule of Criminal Procedure 23(c).  [*Id.* at 16:5–25.]  The Court explained to Defendant as follows:

THE COURT: Okay.  So you understand if a party requests -- before *this* Court were to make *its* determination of guilt or nonguilt, the party could request that *this* Court make *its* specific findings as to why *it* rendered a finding of guilty or

23

not guilty.  It's not required, but if a party requests it, the Court would do that under Rule 23(c).  And so you are waiving your right, you are simply requesting that this Court find you guilty or not guilty -- in your case not guilty – and *I*[11] don't need to give specific findings.

[MURPHY]:  You -- you don't -- wait, wait.  That's not the same thing he just -- he told me about a – he said something about a jury trial.

MR. BURKE:  No. I'll do it louder.  I'll do it louder.  In other words, if the *Judge* finds you not guilty, *she* doesn't have to state on the record the reason why.  But what does it matter to you?  If she finds you not guilty, the case is over and you leave through that door.

[MURPHY]:  But if she finds me guilty, then I would like for her to say why she –

MR. BURKE:  *She* will have to in a subsequent opinion.  *She* doesn't have to do it on the record in front of you.  *She* could do it in a subsequent opinion.  When you appeal, you're entitled to that. *She* has to file an opinion if –

[MURPHY]: Well, I would prefer that, like to know if I do get found guilty or not guilty, whatever, I would like to know what it is I'm being found guilty of. I do want to know that.

MR. BURKE:  Well, you do understand what the charge is, right? You have a copy of the indictment.

[MURPHY]:  I do.

MR. BURKE:  And you have read that, correct?

[MURPHY]:  Yes.

MR. BURKE:  So you know what you're being charged with?

[MURPHY]:  I do.

MR. BURKE:  Okay.  So, in other words, like, again, if the Court finds you not guilty, the reasons are irrelevant to you because you're free to go.

[MURPHY]:  It is. It would be. And then if I got found guilty, then I would know because if I come -- if I appeal whatever the decision was, I would have a basis of the decision based on what the *Judge* put into *her* –

---

[11]  "I"  is  "[u]sed  by  the  speaker  or  writer  referring  to  himself  or  herself." THE OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/i_pron?tab=meaning_and_use#1073073 (last visited Apr. 13, 2025).

MR. BURKE:  Opinion.

[MURPHY]:  -- in *her* record, the *Judge's* opinion.

THE COURT:  All right. I'm just going to delete the part that talks about findings of fact, and the Court will make its findings of fact, which *I* would intend to do then and there at the conclusion of the trial.  Okay. So I'm going to hand you the waiver of trial by jury for your signature, Mr. Murphy, and for your signature, Mr. Burke.  It would be most likely not -- just for the benefit of the parties, *I* do not envision the Court issuing a written decision but a decision from the bench.  And whether it's upon the conclusion of the trial or *I* bring the parties in and *I* render my ruling from the bench, *I* would so do.

[*Id.* at 18:7–20:14 (emphasis added).]  The Court finds it unnecessary to define the emphasized words from this exchange which self-evidently repudiate Defendant's alleged misunderstanding of whether the undersigned would be the factfinder at his bench trial.  But, there's more yet.

Defendant then signed and executed a Waiver of Trial by Jury, acknowledging that he "was fully informed of [his] right to trial by jury in this case," "waive[d] that right," and "request[ed] *the court to try all issues of fact* and law without a jury."  [*Id.* at 20:23–24; Docket No. 85 (emphasis added).]  Finally, prior to the commencement of trial -  Defendant had 12 days beforehand to reconsider his waiver decision - the Court once again advised Defendant that he could revoke his jury-trial waiver at any point prior to the swearing-in of the first witness.  [Trial Tr., 6:24–7:14.]  The Court specifically asked Defendant if he understood that he could revoke his waiver prior to "when this trial begins and the first witness is sworn."  [*Id.* at 7:15–23.]  Murphy answered, "I do now, Your Honor, yes."  [*Id.* at 8:1.]   The Court inquired once more, "You understand that?", to which Murphy reiterated, "I do."  [*Id.* at 8:2–3.]  The Court being satisfied with Defendant's knowing, voluntary, and intelligent decision, trial started, and Mitchell Martinez was sworn in as the first witness.  [*Id.* at 8:4–26:15.]  Under "the particular facts and circumstances surrounding th[is] case, including the background,

25

experience, and conduct of the accused,'" *McMahon v. Fulcomer*, 821 F.2d 934, 944–95 (3d Cir. 1987) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)), Defendant knowingly, intelligently, and voluntarily waived his right to a jury trial. His claim to the contrary is frivolous and "a serious danger that a miscarriage of justice has occurred" is nowhere. *Johnson*, 302 F.3d at 150.

### 3. Ineffective Assistance of Counsel

Defendant claims that prior Counsel "failed to adequately advise [him] that, by waiving his right to a jury trial, he was permitting the same judge who had previously made explicit credibility determinations against him in favor of the government to decide guilt beyond a reasonable doubt, and further failed to advise him that he could request the Court's recusal if he elected to proceed by non-jury trial." [Defendant Rule 33 Br., 1, n.1.]

The Sixth Amendment guarantees a criminal defendant's right to trial by an impartial jury *and* effective assistance of counsel. *See Blair*, 2026 WL 604731, at *2–*3 (first quoting *United States v. Savage*, 85 F.4th 102, 115–16 (3d Cir. 2023); and then citing U.S. CONST. amend. VI). In order to establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The first prong of the *Strickland* test is the performance prong—*i.e.*, "that counsel's representation fell below an objective standard of reasonableness." *Gov't of the Virgin Islands v. Vanterpool*, 767 F.3d 157, 165 (3d Cir. 2014) (quoting *id.* at 688). The proper inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

"Although the Court has authority to hear [Defendant's] claim[ ] under a Rule 33 motion," "rarely, if ever, should an ineffectiveness of counsel claim be decided in a motion

26

for a new trial or on direct appeal." *United States v. Chu*, No. 2:19-CR-0678 (WJM), 2022 WL 17990582, at *2 (D.N.J. Dec. 29, 2022) (citing *United States v. Kennedy*, 354 F. App'x 632, 637 (3d Cir. 2009)). Instead, "the Third Circuit has expressed a strong preference for reviewing allegations of ineffective assistance of counsel in collateral proceedings under 28 U.S.C. § 2255, where the record for such claims may be properly developed." *See id.* (collecting Third Circuit cases). "Given the benefits of adjudicating these claims in a collateral proceeding, the Third Circuit has advised that a district court should only consider an ineffective assistance of counsel claim in a motion for a new trial in the unique circumstance '[w]here the record is sufficient to allow determination of ineffective assistance of counsel, [and] an evidentiary hearing to develop the facts is not needed.'" *United States v. Thompson*, No. 3:22-CR-0002, 2023 WL 4637186, at *3 (D.V.I. July 20, 2023) (quoting *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991)).

The claim before the Court does not fall within this "narrow exception." *United States v. Calloway*, 571 F. App'x 131, 134 (3d Cir. 2014) (quoting *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991)); *see also United States v. Garcia*, 516 F. App'x 149, 151 (3d Cir. 2013); *United States v. St. Vallier*, 404 F. App'x 651, 664 (3d Cir. 2010). Defendant cites the following in support:

> THE COURT: And before I accept your waiver to a jury trial, there are a number of questions I will ask you to ensure that it's a valid waiver. As I said, if you do not understand any of the questions at any time –
>
> [MURPHY]: Excuse me, Your Honor. Can I stop for a minute? Can me and my attorney go out and talk? Not -- I wanted – I'll put it on the record. Because we haven't had a conversation about the -- the stuff that was being told to come into court just now about something –
>
> THE COURT: All right. Go ahead.

27

[MURPHY]:  We never talked about that

THE COURT:  All right.  Go ahead.

[MURPHY]:  I want to just talk about that to him.

(Defense counsel and Defendant exited the courtroom.)

(Discussion was held off the record.)

MR. BENDER:  Here's a proposed order.

(Handing document to the Court.)

(Defense counsel and [Murphy] returned to the courtroom.)

THE COURT: Okay. You ready to proceed, Mr. Murphy?

[MURPHY]: Yes.

[Colloquy Tr., 11:3–25.]  From this brief excerpt, Defendant argues that he "affirmatively interrupted the proceeding to inform the Court, on the record, that he and Mr. Burke had never discussed the waiver at all prior to that moment."  [Defendant Rule 33 Br., 3.] Defendant claims no factual development is needed because "[w]hatever was said during the sidebar cannot retroactively change that counsel allowed the Court to proceed toward a constitutional waiver without having ever consulted his client about it in the first place." [*Id.* at 3.]

First, the Court is perplexed at this apparently broader claim than that which has so far been advocated, or at least so understood by the Court: Is Defendant now arguing that prior Counsel never generally advised him earlier about waiving his right to a jury trial or that prior Counsel failed to adequately explain to him that the suppression judge and bench-trial judge would be this Court were he to do so?  In any event, no matter how the claim is framed the passage cited above does not "at all" indisputably factually establish that Defendant and

28

prior Counsel "never discussed" waiving his right to an impartial jury or the allegedly inherent risk of proceeding with this Court acting as factfinder at the bench trial after making adverse credibility determinations at the motion-to-suppress stage. Defendant and prior Counsel's private conversation is not in the record, and, even if it were, a clear factual dispute arises because the Government twice informed the Court of *Defendant's* communicated "desire to waive his right to a jury trial" that beget the colloquy in the first place. [Colloquy Tr., 3:24–25; Docket No. 83]

It is clear that the basis for Defendant's ineffectiveness claim is not "patent on the face of the record" such that Rule 33 review may proceed. *United States v. Petway*, No. 17-534 (KM), 2022 WL 3152624, at *4 (D.N.J. Aug. 8, 2022). The Court therefore agrees with the Government that factual development is required to properly resolve the claim. *See* [Gov't Rule 33 Br., 1.] At the very least, prior Counsel's, if not Defendant's, testimony is required, hence the Government's request to interview prior Counsel. *See* [Docket Nos. 101, 110, 113.] Where the Court parts company with the Government is on the Court's lack of authority to factually develop the record and adjudicate the claim under Rule 33, which is "consistent with the practice of" courts in the Third Circuit. *United States v. Flamer*, No. 08-1421, 2009 WL 237084, at *2 (3d Cir. Feb. 3, 2009) (citation omitted). In other words, Defendant "may mount a collateral challenge by a federal habeas petition as allowed by 28 U.S.C. § 2255. That mechanism, rather than a new trial, seems best to accommodate the interests in finality and fairness with respect to ineffective assistance of counsel claims." *United States v. DeRewal*,

10 F.3d 100, 105 (3d Cir. 1993) (quoting *United States v. Ugalde*, 861 F.2d 802, 809 (5th Cir. 1988)).

For the foregoing reasons, the Court follows Third Circuit practice and declines to hear the merits of Defendant's claim of ineffective assistance of counsel brought under Rule 33.[12]  The Court notes that the disposition is without prejudice to Defendant's ability to bring a claim under 28 U.S.C. § 2255.[13]

## III.    CONCLUSION

For the foregoing reasons, Defendant Marvin Murphy's Motion for Judgment of Acquittal, or, Alternatively, for a New Trial [Docket No. 100] is **DENIED in its entirety**.

---

[12] Defendant appears to argue that this Court has equitable power to decide the ineffectiveness claim even if the factual record demands development.  [Defendant Rule 33 Br., 3–4.] Defendant proffers no caselaw for such authority, *see* [*id.*], and the Court otherwise relies on the established practice explained above.

[13] If Defendant sincerely believes that the Court has misconstrued his Rule 33 claim in some manner, then he may file a motion for reconsideration within 14 days of the entry of this Opinion and accompanying Order.  "Motions for reconsideration are filed pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1(i), which allow a party to seek reconsideration of matters the party believes the judge has 'overlooked.'"  *United States v. Weeks*, No. 19-877, 2026 WL 295748, at *1 (D.N.J. Feb. 4, 2026) (citing *Shore Options Inc. v. Great Am. Ins. Grp.*, No. 20-3835, 2021 WL 2103260, at *2 (D.N.J. May 25, 2021); *see id.* ("Local Civil Rule 7.1(i) applies to criminal cases in the District of New Jersey.").  Defendant should be mindful that a motion for reconsideration "addresses only factual and legal matters that the Court may have overlooked ….  It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through rightly or wrongly."  *United States v. Teed*, No. 17-129, 2021 WL 807723, at *1 (W.D. Pa. Mar. 3, 2021) (citation omitted).

The denial of the Motion is **WITHOUT PREJUDICE** as to Defendant's ability to bring a claim of ineffective assistance of counsel under 28 U.S.C. § 2255.  An accompanying Order shall issue.

**April 16, 2026**  
Date

        **s/ Renée Marie Bumb**  
        Renée Marie Bumb  
        Chief United States District Judge